# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

vs.                                                                    No. CV 10-0439 RB/DJS
                                                                             CR 08-0792 RB

CESAR CHACON,

      Defendant/Movant.


## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION[1]

    **THIS MATTER** is before the Court on Defendant/Movant Cesar Chacon's ("Chacon")

Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255.  [CV 10-0439,

Doc. No. 1.] [2]  Chacon attacks the judgment and sentence entered by the United States District

Court for the District of New Mexico in *United States v. Chacon*, No. CR 08-0792 RB.  Chacon,

proceeding pro se, contends his counsel provided ineffective assistance.  As Chacon is

proceeding pro se, the Court liberally construes his pleadings.  *See Haines v. Kerner*, 404 U.S.

519, 520-21 (1972) (per curiam).  Chacon contends counsel was ineffective when he  (1) failed

---

[1] Within fourteen (14) days after a party is served a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the United States District Court within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

[2] Further references herein to documents in CV 10-0439 RB/DJS, the civil action under §2255, will be in the format, "CV Doc. __."  References to documents filed in *United States v. Chacon*, CR 08-0792 RB/DJS will be referred to as "CR Doc. __."

to challenge the conspiracy charge, (2) failed to recommend leniency;  (3) failed to pursue a

minor role reduction, (4) failed to show him the presentence report, and (5) failed to challenge

his career offender status.

On June 6, 2010, the United States filed its response to Chacon's motion and requested

that his motion be dismissed without an evidentiary hearing. [CV Doc. 5]  On October 7, 2010,

Chacon filed a reply. [CV Doc. 6.]

## I.  Background

On January 17, 2008, Chacon drove to the Border Patrol checkpoint located on New

Mexico Highway 11, north of Columbus, New Mexico.  Chacon was the sole occupant in the

vehicle.  A Border Patrol canine standing at the checkpoint alerted to the rear of Chacon's

vehicle.  Inspection of the undercarriage revealed that someone had recently tampered with the

gas tank.  Removal of the tank resulted in the discovery of forty-four (44) heat sealed plastic

packages of marijuana weighing a total of 37.45 kilograms (82.4 pounds).  A records check

revealed that Chacon was under a term of supervised release for his February 6, 2006 conviction

for possession with intent to distribute more than fifty kilograms of marijuana and aiding and

abetting.  Chacon was advised of his Miranda rights and agreed to answer questions.  Chacon

informed the agents that this was the third marijuana load he had transported through the Border

Patrol checkpoint.  [CR Doc. 2.]

On January 20, 2008, the United States filed a Criminal Complaint against Chacon. [CR

Doc. 2.]  On April 17, 2008, a federal grand jury returned an indictment charging Chacon with

one count of conspiracy to possess with intent to distribute more than fifty kilograms of

marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and § 846, and one count of

possession with intent to distribute less than fifty kilograms of marijuana, in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.  [CR Doc. 20.]

On May 28, 2008, Chacon consented to have his plea heard by a United States

Magistrate Judge and pled guilty to the indictment without benefit of a plea agreement. [CR Doc.

42, p. 9.]  During the plea hearing, Mario Esparza represented Chacon.  The Court questioned

Chacon as to his age, education, citizenship, physical and mental condition and whether he had

taken any medicine or any other substance that would affect his ability to understand his plea.

[*Id.*, p. 7.]  Chacon also indicated, in part, that he: (1) understood the charges against him; (2)

discussed with his counsel the offenses charged, the consequences of pleading guilty, his

possible sentences, and the United States Sentencing Guidelines consideration; (3) was

knowingly and voluntarily agreeing to plead guilty; (4) understood the consequences of pleading

guilty, including the fact the maximum sentence was twenty years for the conspiracy drug count

and five years for the other drug-related count against him; (5) understood the rights he was

relinquishing in pleading guilty; and (6) confirmed his wish to plead guilty to the offenses

charged. [Id., pp. 7-19]; *see* also *United States v. Chacon*, 343 F. App'x 306, 307 (10th Cir.

2009).

During the plea hearing, the following colloquy between the Court and Chacon occurred:

Court:    Have you gone over your case with your attorney and discussed your
          charge and any possible defense to that charge that you might have?

Chacon:   Yes, your Honor.

Court:    Actually charges.  Did you have enough time to go over your case with
          your attorney?

Chacon:   Yes, your Honor.

3

| | |
|---|---|
| Court: | Did your attorney answer all of your questions about your case and this proceeding to your satisfaction? |
| Chacon: | Yes, your Honor. |
| Court: | Are you pleased and satisfied with the advice and representation of your attorney? |
| Chacon: | Yes, your Honor. |
| Court: | Do you have any complaints whatsoever about your attorney? |
| Chacon: | No, no, ma'am. |

[CR Doc. 42, pp. 8-9.]  The Court accepted Chacon's plea of guilty and ordered a presentence report. [*Id.*, p. 30]

A probation officer prepared a presentence report calculating Chacon's sentences under the applicable 2007 Guidelines.  "The probation officer calculated the base offense level at 24, under U.S.S.G. § 2D1.1(c)(8), because the instant offenses involved 80.8 net kilograms of marijuana, but adjusted his offense level to 32, under U.S.S.G. § 4B1.1, because he qualified as a career offender."  *United States v. Chacon*, 343 F. App'x at 307.  Additionally, "based on Mr. Chacon's acceptance of responsibility for the offenses charged, the probation officer included a three-level reduction, for a total offense level of 29."  *Id.*  "A total offense level of 29, together with a criminal history category of VI, for being a career offender, resulted in a Guidelines sentencing range of 151 to 188 months imprisonment for his count for conspiracy to possess with intent to distribute more than fifty kilograms of marijuana and a maximum term of imprisonment of sixty months for his count for possession with intent to distribute less than fifty kilograms of marijuana."  *Id.*  In calculating Mr. Chacon's sentences, the probation officer added criminal points for Mr. Chacon's commission of the instant offenses while under a term of

4

supervised release for his February 6, 2006 conviction.  *Id.*  Chacon did not file objections to the presentence report.

On November 24, 2008, the district court held a sentencing hearing and sentenced Chacon to concurrent sentences of 151 months for the conspiracy to possess with intent to distribute more than fifty kilograms of marijuana charge and 60 months for the possession with intent to distribute less than fifty kilograms of marijuana charge, which resulted in a total term of imprisonment of 151 months.  The district court entered Judgment against Chacon on the same day.  [CR Doc. 31.]

On December 4, 2008  Chacon appealed both his conviction and sentence. [CR Doc. 32.] The Court of Appeals granted Mr. Esparza's motion to withdraw and appointed new counsel. His newly-appointed counsel filed an *Anders* appeal brief explaining she had determined Chacon's appeal presented no legally nonfrivolous issues.  The Court of Appeals for the Tenth Circuit held that Chacon's plea was knowing and voluntary and dismissed the appeal.  *United States v. Chacon*, 343 F. App'x at 307-308.  Chacon did not petition the United States Supreme Court for a Writ of Certiorari.

On May 3, 2010, Chacon filed the present §2255 motion.  As stated above, Chacon contends Mr. Esparza was ineffective when he  (1) failed to challenge the conspiracy charge, (2) failed to recommend leniency, (3) failed to pursue a minor role reduction, (4) failed to show him the presentence report, and (5) failed to challenge his career offender status.

## II.  Discussion

To succeed on a claim of ineffective assistance of counsel, Chacon must show two things: (1) that his "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

To satisfy the first prong under *Strickland*, Chacon must identify "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690.   In addition, the Court also examines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.*  To prove deficient performance under *Strickland*, Chacon must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ."  *Id*. at 689.

## A.  Failure to Challenge the Conspiracy Charge

Chacon contends Mr. Esparza was ineffective because he did not object to the United States's charge that there was a conspiracy present in the instant case.  Chacon also claims Mr. Esparza " push[ed] me to incriminate myself by telling the judge in my 'bad' [E]nglish my participation in the 'conspiracy.'" [CR Doc. 1, p. 5.]  Chacon further claims his "case shouldn't be a conspiracy" as [i]t should be aiding and abetting" since "there were only two people involved." [Id.]  Chacon also claims, "Aparently (sic) they arrested a woman on October with 46 kilos of marijuana and she tells on me.  Then I got arrested in January with 37 kilos.  I went to

6

court and they charged me with transportation, possession with intent to distribute and that was it." [CR Doc. 1, p.7.] Chacon also questions how the United States can charge him with conspiracy when the "third person" was never arrested. *Id.*

At the plea hearing, prior to the United States setting forth the factual basis and what it would prove beyond a reasonable doubt at trial, the Court addressed Chacon and directed him to "listen carefully to what Mr. Wong describes as the factual basis for your crimes" because the Court was going "to ask you in a minute if you agree or disagree with any of these facts." [CR Doc. 42, p. 19.] The United States set forth the factual basis and what the United States would prove beyond a reasonable doubt at trial as follows:

> Mr. Wong:  [T]he government would prove that on or about October of 2007 a person was arrested by the U.S. border patrol in Dona Ana county, New Mexico with approximately 46 kilograms of marijuana in a gas tank of a vehicle.  The person subsequently stated that she met the defendant and the defendant asked her if she wanted to make money driving from New Mexico to Minnesota.  The defendant introduced this person to a third person and the three of them discussed how this person was going to drive from New Mexico to Minnesota. This person subsequently picked up a vehicle and signed the title.
>
> On the day of this person's departure on the trip, the defendant took her to a residence, gave her traveling money[.]  The defendant, the driver, and the third person then all went to Wal-Mart together to buy a cell phone.  DEA agents subsequently obtained a video surveillance from that Wal-Mart and they have the three of these individuals together at the Wal-Mart buying a cell phone.  That is depicted on the videotape.  In addition, this person was arrested with a cell phone that was purchased at that Wal-Mart.
>
> Later, on January 17, 2008, the defendant himself entered the United States . . . at a checkpoint on Highway 11 north of Columbus, New Mexico.  The defendant was driving a Chevy Tahoe pickup truck.  As the defendant came to a stop at the primary inspection area the drug detection  dog alerted to the truck.  Agents looked at the truck and discovered that someone had recently tampered with the gas tank.  The defendant was then asked to go into the station for further processing.  When he was in the station, agents could smell a . . . strong smell of gas emanating from the defendant.  The gas tank was dismantled and agents discovered 44 bundles of marijuana that contained 37.4 kilograms.  Both the 46 kilograms I mentioned earlier and the 37 kilograms defendant was found with on January 17 are a distributable

amount of marijuana.  The total weight of the marijuana on both occasions is 84 or
approximately 84 kilograms.

[CR Doc. 42, pp. 19-21.]  Immediately after the United States set forth the facts above, the

following exchange took place:

| | |
|---|---|
| Court: | So for the conspiracy you add the two amounts of marijuana together, for the conspiracy, for the total amount? |
| Wong: | Judge– |
| Court: | – and then you count half of that again for the second count? |
| Wong: | That is correct, your Honor. |
| Court: | They can count in both places? |
| Wong: | He both – he conspired to transport it and he possessed it. |
| Court: | Well, he conspired to transport the 46– |
| Wong: | – yes, and he– |
| Court: | – and he transported the 37.  Where's the conspiracy to transport the 37? Shouldn't they both– |
| Esparza: | Well, your Honor, it was part of the same operation in essence, the same part of the initial conspiracy. |
| Court: | Oh, it was? |
| Esparza: | Yes, for the same– |
| Court: | – one was in October and one was in January. |
| Esparza: | Right, but both times Mr. Chacon was working for this third party, who was not apprehended, who was the head of the operation– |
| Court: | – Okay. |

| | |
|---|---|
| Esparza: | – and the conspiracy. |
| Court: | So that kosher?  That's not double jeopardy or anything like that? |
| Esparza: | It's part of the conspiracy. |
| Court: | Okay. |
| Wong: | We frequently charge both conspiracy and possession if they are both agreeing to move it– was agreeing with someone else to move the marijuana and they, themselves, are possessing it with the intent to distribute it. |
| Court: | Well, you didn't mention on January 17th that he conspired with anybody to bring that in.  You just said he, himself, drove across with that amount. |
| Wong: | That is correct, your Honor.  I neglected to mention that he was moving it on behalf of a third party and that was the same organization, the same group, that agreed to move the October marijuana. |
| Court: | Okay.  Now it makes sense to me.  Mr. Chacon do you agree with all these facts? |
| Chacon: | Yes, your Honor. |
| Court: | Do you disagree with any of the facts? |
| Chacon: | No, your Honor. |
| Court: | Are you sure? |
| Chacon: | Yes. |
| Court: | Now's the time to tell me, not in your habeas corpus. |

[CR Doc. 42, pp. 21-23.]  The Court asked Chacon a second time if he disagreed with any of the

facts.  Chacon again responded, "No." [*Id.*, p. 23.]  The Court then asked Chacon to "tell me in

9

your own words why you're guilty of this conspiracy charge." [*Id.*] The Court was very specific in asking about the conspiracy charge.  Chacon testified as follows:

Court:      What did you do in your conspiracy in working with others?

Chacon:    (After consulting with counsel) That I was part of a third party person.

Court:      You have to tell me in your words what you did that convinces me you are guilty of this conspiracy.  Now Mr. Wong described a woman apparently that you asked to help you make some money by driving a vehicle.

Chacon:    Yes.

Court:      So tell me about what you did and what your involvement was at Wal-Mart and everything that you did for that conspiracy?

Chacon:    The only thing I can tell you is that I went and – not the first time I go to Wal-Mart.  I go to Wal-Mart every day when I'm out there and I don't know what the – kind of what the –

Court:      – Did you go to Wal-Mart to help her buy a cell phone?

Chacon:    Yes.  Well, yes, we went to Wal-Mart and bought a cell phone.  I know I bought a cell phone but not for me.

Court:      You what?

Chacon:    Not for me, your Honor.

Court:      That's why it's a conspiracy.

Chacon:    Yes, oh.

Esparza:   That's part of conspiracy.

Chacon:    Oh, Okay.

Court:        Do you know what conspiracy means?  It means you do something with

              other people.  You all agree to commit a crime and each of you does a

              little different part in that crime but because you are all of the same mind

              that you're going to transport and distribute marijuana–

Chacon:       – yes.

Court:        – you're all part of that agreement.  So I want to know what you did as

              part of that agreement.

Chacon:       I went to Wal-Mart with those people.

Court:        Okay.  And what did you do at Wal-Mart?

Chacon:       We went shopping.  They bought a cell phone.

Court:        And what was the cell phone for?

Chacon:       For the lady that she wanted to buy that cell phone.

Court:        And what was she going to do with the cell phone?

Chacon:       She was going to have it with her.

Court:        Why?

Chacon:       Just for her to be calling this guy.

Court:        What guy?

Chacon:       (After consulting with counsel) The driving needs– she was driving the

              car, just to have it with her so she will –

Court:        – Okay.  And what was in the car?

Chacon:       (After consulting with counsel) Marijuana.

Court:        Okay.  And did you get her involved in all of this?

Chacon:       Who me?

Court:          You.

Chacon:         Yes.

Court:          Did you?

Chacon:         Yes.

Court:          Are you sure?  I need to satisfy myself–

Chacon:         – Yes, your Honor.  It's me.

Court:          – that you committed a crime here.

Chacon:         It was me, yes.

Court:          Without your attorney putting words in your mouth.

Chacon:         No, no, no.

Court:          I need to satisfy myself.  What did you do?

Chacon:         We just went to Wal-Mart and we tried to get a cell phone for her and
                that's it.

Court:          Okay.  And what was the purpose of getting her a cell phone?

Chacon:         So that she can call.

Court:          Call who?

Chacon:         Call her.

Court:          You?

Chacon:         Yes, call me.

Court:          Okay.   Why did she need to call you?  That's not a crime.  What makes it
                a crime?

Chacon:         That she was going to take that marijuana with her.

Court:          Okay.  And where did she get the marijuana, from you?

Chacon:          Yes, your Honor.

Court:           Okay.  And did you help load it in the car?

Chacon:          Yes, your Honor.

Court:           All right.  Now tell me about Count Two.  Why are you guilty of Count

                 Two?  You possessed–

Chacon:          – 'cause I had the load in my vehicle.

Court:           Load of what?

Chacon:          Marijuana.

Court:           Okay.  And where were you driving?

Chacon:          Where was I driving?

Court:           Uh-huh.

Chacon:          From Columbus to Deming.

**   **   **   **

Court:           And what happened at the checkpoint?

Chacon:          I was pulled over.  As soon as I stopped there, they just pulled me over.

Court:           And why did they do that?

Chacon:          They told me they were going to check the vehicle and that if I didn't have

                 any problem, I go forward.

Court:           Okay.  You gave them consent?

Chacon:          Yes, ma'am.

Court:           And what did they find?

Chacon:          Marijuana.

Court:           Where?

13

| | |
|---|---|
| Chacon: | In the tank.  I didn't saw it but they told me that it was in the tank. |
| Court: | Okay.  You didn't load it? |
| Chacon: | Yes, your Honor. |
| Court: | You did load it? |
| Chacon: | Yes, your Honor. |
| Court: | Is that why your hands smelled like gas, gasoline? |
| Chacon: | Yes, I guess. |
| Court: | Okay.  Cesar Chacon, how do you plead to the charge of conspiracy to possess with intent to distribute 50 kilograms or more of marijuana? |
| Chacon: | Guilty. |
| Court: | And how do you plead to the charge of possession with intent to distribute less than 50 kilograms of marijuana? |
| Chacon: | Guilty. |

[CR Doc. 42, pp. 23-29.]  As the record reflects, the Court took the time to explain what a conspiracy entailed.  After the Court's explanation, Chacon admitted he was part of the conspiracy.  Significantly, substantial evidence in the record established a conspiracy between Chacon and two other individuals to distribute marijuana.  Chacon's complaint that one of the individuals was never arrested does not change the fact that Chacon conspired with this individual to transport the marijuana.  Therefore, Mr. Esparza was not ineffective when he did not challenge the conspiracy charge.  *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir.2006) (explaining that failure to raise a meritless claim is not ineffective assistance of counsel).  Accordingly, the Court recommends this claim be dismissed with prejudice.

**B.  Leniency at Sentencing**

In his §2255 motion, Chacon states, "My guilty plea was induced by an unfulfilled promise by my lawyer to recommend leniency at sentencing because there was nothing he can do." [CV Doc. 1, p.8.]  Chacon further claims he "is not attacking my conviction" "[o]nly that any misinformation by my lawyer constituted ineffective assistance and that, but for such misinformation I would not have plead[ed] guilty of the conspiracy charge." *Id.*

The record does not support Chacon's assertions.  At the sentencing, Mr. Esparza recommended a number of sentencing measures to the Court.  In support of his recommendations, Mr. Esparza provided the Court a "package of letters" from Chacon's family. CR Doc. 37, p. 8.]  Mr. Esparza argued that Chacon had a great deal of family support, requested Chacon receive an FCI designation to La Tuna or Tucson, Arizona in order for him to be close to his family, and requested a "low end of the Guideline sentence," specifically "151 months as to Count I" and "as to Count II, the 60 months be concurrent with that offense, for a total of 151 months." [CR Doc. 37, p. 9.]  Mr. Esparza also requested the Court "consider running [the supervised release violation] concurrent." [*Id.*, p. 9-10.]  Specifically, Mr. Esparza argued, "I know the Guidelines policy speaks to any violation being run consecutive, but given the non-mandatory nature of the Guidelines now, we would ask that the Court go ahead and run that 15 months concurrent to the charges that he's receiving in the current offense, for a total sentence of 151 months." [*Id.*, p. 10.]  Mr. Esparza further argued,

> We think 12 years and seven months to do, that would be more than sufficient to impress upon Cesar that, when de does get out, he has to change his ways.  I think that he is committed to trying to rehabilitate himself while he's in.  And I know it's difficult to stand here in front of Your Honor, after he has committed three trafficking charges, and request further leniency, but I think that, as the letters that you received from his family and the support that they've come in to show this morning and on previous occasions, Judge, indicate, they think that, if he's

15

committed, they're willing to stand behind him.  And we'd ask for an opportunity
[to] allow him to pay for his crime and then return to his family in the Deming area.

[*Id.*]  The Court gave Chacon the opportunity to address the Court after Mr. Esparza's arguments

for leniency.  Chacon stated that he now realized what he was losing, that he was leaving his

family and it was his family that would suffer.  [*Id.*, p.12.]  Finally, Chacon stated, "I'd like to

thank my attorney for what he was able to do for me." [*Id.*]

The Court found Mr. Esparza's arguments for leniency persuasive as he sentenced

Chacon to 151 months.  As to the supervised release violation, the Court noted the imprisonment

range was 15 to 21 months and sentenced him to "a term of 15 months," ten months to run

consecutive and five months to run concurrent with the term of 151 months imposed in 08-cr-

792.  The Court further recommended Chacon "be allowed to serve his time at FCE La Tuna or

Tucson, those FCI's closest to his family in the Deming area and that will facilitate ongoing

contact with his family." [CR Doc. 37, p. 19.]   Finally, the Court recommended Chacon

"participate in the Bureau of Prisons' 500-hour drug and alcohol treatment program." [*Id.*, p. 17.]

As the record indicates, Mr. Esparza argued for leniency and had all but one request

granted by the Court.  The Court concludes that there are no grounds to support Chacon's

ineffective assistance of counsel argument based on this allegation.  Accordingly, the Court

recommends that it be dismissed with prejudice.

## C.  Failure to Pursue a Minor Role Reduction

Chacon next argues, "I believed I should have received a 2 point level reduction because

I was a minor participant.  The lawyer and the government knew it was a third person involved

they mentioned at my plea hearing" [CV Doc. 1, p.5.]  Essentially, Chacon argues Mr. Esparza

was ineffective in failing to object to the presentence report when he was not awarded a two-

level reduction for minor participation pursuant to Guideline 3B1.2(b).  However, Chacon did receive a three-level reduction for  acceptance of responsibility for the offenses charged.

 In *United States v. Jeppeson*, 333 F.3d 1180 (10th Cir. 2003) the Court of Appeals for the Tenth Circuit, addressed the question of whether a defendant designated as a career offender under §4B1.1 is eligible to receive a downward adjustment for his or her role in the offense under §3B1.2.  The Court held that "[t]he career offender guideline trumps all other offense level adjustments, with the exception of reductions for the acceptance of responsibility." *Id.* at 1184 (quoting *United States v. Beltran*, 122 F.3d 1156, 1160 (8th Cir.1997)).  At sentencing the Court found Chacon was a career offender.  [CR Doc. 37, p.17.]  Accordingly, Chacon was not eligible for a two-level reduction under Guideline 3B1.2(b).  Thus, Mr. Esparza was not ineffective when he failed to object to the presentence report on the grounds it did not grant Chacon a two-level downward adjustment for his role in the offense.  *See Sperry*, 445 F.3d at 1275 (explaining that failure to raise a meritless claim is not ineffective assistance of counsel).  For the foregoing reasons, the Court concludes that Chacon's ineffective assistance of counsel claim on the grounds that he failed to object to the presentence report because he did not receive a two-level reduction for minor participation pursuant to Guideline 3B1.2(b) fails and recommends it be dismissed with prejudice.

## D.  Presentence Report

 Chacon presents two arguments regarding his ineffective assistance of counsel claim regarding his presentence report.  First, he complains that the Court relied on his previous presentence report as he was not interviewed by a probation officer for the current offense.  Chacon also complains "the judge never ask me if I have discussed the "psr" with my lawyer." [CV Doc. 1, p. 6.]

As to his first argument, Chacon contends,

> I knew the judge ordered a probation report on my plea hearing.  But the probation officer never come to see me.  I never got interviewed before my sentencing day.  I do not know why me lawyer lie to the judge and push me to do the same thing.
> **   **   **   **
> And at sentencing the judge "only" ask Mr. Esparza about the probation report.  The judge never ask me. [  ]  I always thought that the United States Probation Officer shall had make investigation report prior to sentencing of a defendant that is required every time of a new offense is comitted (sic).  (In my case I think they use the same information from my last case).

[*Id.*] Chacon does not deny that he has two prior felony convictions for Possession with Intent to Distribute Less Than 50 Kilograms of Marijuana and Aiding and Abetting.  One conviction was on December 18, 1996, and the second was on February 6, 2006.

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, "[t]he probation officer must conduct a presentence investigation and submit a report to the court before it imposes sentence unless (i) 18 U.S.C. § 3593(c) or another statute requires otherwise; or (ii) the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record."  FED.R.CRIM.P. 32(c)(1)(a).  A presentence interview generally is conducted by a probation officer prior to sentencing and normally is voluntary.  A "defendant is usually not under court order to submit to an interview with the probation officer, and can refuse altogether to be interviewed.  Most of the information on the presentence report is gathered from other sources in any event."  *United States v. Rogers*, 921 F.2d 975, 980 (10th Cir. 1990).  Because Chacon's last felony conviction was in 2006, it was proper for the probation officer to update the presentence report to include the current conviction without interviewing Chacon.  Therefore, there is no legal basis for Chacon's claim that a probation officer was required to meet with him or that the Court improperly relied upon information from his previous presentence report.

Chacon also claims the sentencing Court "only asked Mr. Esparza about the probation report" and "never ask me." [CV Doc. 1, p. 6.]  At the sentencing hearing, the Court addressed Mr. Esparza and asked him if he had reviewed the presentence report with Chacon. [CR Doc. 37, p. 8.]  Mr. Esparza responded that he had.  Chacon does not claim that Mr. Esparza did not review the presentence report with him.  Moreover, Mr. Esparza filed an Affidavit attesting that he reviewed the presentence report with Chacon. [CV Doc. 5, Ex. A.]  Chacon's only complaint is that the Court did not ask him about the presentence report.  In asking Mr. Esparza about having reviewed the presentence report with Chacon, the Court was, in essence, indirectly asking Chacon.  At various points in the sentencing, the Court provided Chacon the opportunity to discuss any concerns he may have had regarding his sentencing.  *See* [CR Doc. 37, p. 4-6 ("I need to make sure that you understand the rights that you give up by entering an admission.")], [*Id.*, p. 6 ("[H]as anyone promised you anything in return for your admission?)], [*Id.*, p. 7 ("And Mr. Esparza had represented you.  Are you satisfied with his advice?)], [Id. (Any complaints about your lawyer?)].  Chacon never raised any concerns.

For the foregoing reasons, the Court finds that Chacon's claim of ineffective assistance of counsel based on these allegations fails.  Accordingly, the Court recommends the claim be dismissed with prejudice.

**E.  Failure to Challenge his Career Offender Status**

Chacon's next claim as to ineffective assistance of counsel relates to his designation as a Career Offender pursuant to the Sentencing Guidelines.  Chacon cites to Guideline §4B1.1(b) arguing "a carrer (sis) offender's criminal history in every case under this subsection shall be CATEGORY VI, and I was category IV at the time of my arrest." [CV Doc. 1, p. 7.]

Pursuant to Guideline §4B1.1(a), a defendant is a career offender if, in relevant part, he "has at least two prior felony convictions of ... a controlled substance offense." U.S.S.G. §4B1.1(a). Guideline §4B1.1(b) provides:

> (b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

U.S.S.G. §4B1.1(b). As Chacon was convicted of two felony convictions of a controlled substance offense prior to his current convictions, he qualified as a career offender under the guidelines. Counsel's performance is not ineffective for failure to set forth arguments that have no merit or would be futile to raise. *See Sperry,* 445 F.3d at 1275. Thus, Mr. Esparza was not required to challenge the Court's finding that Chacon was a career offender. Accordingly, the Court concludes that Chacon's ineffective assistance of counsel claim on the basis of this allegation fails and recommends it be dismissed with prejudice.

## F.  Evidentiary Hearing

When a federal prisoner files a petition for post-conviction relief, the district court must hold an evidentiary hearing on the prisoner's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Moreover, a hearing is not required when issues raised by a defendant can be resolved on the basis of evidence on the record. *See United States v. Hardridge*, 285 F.App'x 511, 517 (10th Cir. 2008). Because the record conclusively shows that Chacon is not entitled to relief, a hearing is not warranted.

**<u>Recommended Disposition</u>**

After reviewing the record and the parties' arguments, the Court concludes that Chacon

has not met his burden under *Strickland v. Washington*, 466 U.S. 668, 688 (1984) and

recommends that the Motion to Vacate, Set Aside, or Correct Sentence be **DENIED** and the case

be dismissed with prejudice.

_____
**DON J. SVET**
**United States Magistrate Judge**